IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Berkeley Shredding, LLC; McRoy Equipment, LLC; MPR Holdings, LLC; and BBDS Used Auto Sale, Inc. d/b/a B&D Auto Parts, individually and derivatively on behalf of Plaintiff Berkeley Shredding, LLC<br><br>Plaintiffs,<br><br>v.<br><br>Conserv Capital, LLC; Conserv Equipment Leasing, LLC; Conserv Lending, LLC; and Conserve BECM, LLC<br><br>Defendants. | Case No.: 2:23-cv-00436-DCN<br><br>**VERIFIED COMPLAINT** |

COME NOW Plaintiffs McRoy Equipment, LLC ("McRoy Equipment"), MPR Holdings, LLC, ("MPR") and BBDS Used Auto Sale, Inc. d/b/a B&D Auto Parts ("B&D") (McRoy Equipment, MPR and B&D are referred to collectively, as "Plaintiffs"), individually and derivatively on behalf of Plaintiff Berkeley Shredding, LLC ("Berkeley Shredding" or the "Company"), by and through undersigned counsel, complaining of Defendants Conserv Capital, LLC, Conserv Equipment Leasing, LLC, Conserv Lending, LLC, and Conserve BECM, LLC, (referred to collectively, as "Conserv") state as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Berkeley Shredding is a South Carolina company with a principal place of business in Berkeley County, South Carolina.

2. McRoy Equipment is a South Carolina company with a principal place of business in Dorchester County, South Carolina.

1

3. MPR is a South Carolina company with a principal place of business in Dorchester County, South Carolina.

4. B&D is a South Carolina company with a principal place of business in Charleston County, South Carolina.

5. Conserv Capital, LLC, is a limited liability company organized under the laws of Tennessee that conducts business in South Carolina.

6. Conserv Equipment Leasing, LLC, is a limited liability company organized under the laws of Tennessee that conducts business in South Carolina.

7. Conserv Lending, LLC, is a limited liability company organized under the laws of Tennessee that conducts business in South Carolina.

8. Conserve BECM, LLC, is a limited liability company organized under the laws of Delaware that conducts business in South Carolina.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that it is a diversity action between the Parties and the amount in controversy exceeds $75,000.00.

10. Venue in this Court is proper under 28 U.S.C. § 1391(b) because the alleged actions or omissions giving rise to the causes of action asserted herein occurred in this Division, the contracts at issue involve transactions taking place in this Division, and the real property upon which the Shredding Machine is located is in this Division.

## DERIVATIVE CERTIFICATION

11. This Complaint is verified by Plaintiffs.

12. Plaintiffs are members of Berkeley Shredding and have been members at all times complained of herein.

13. Plaintiffs fairly and accurately represent the interests of the other members in Berkeley Shredding by seeking to enforce the rights of Berkeley Shredding.

14. This action is not a collusive one to confer jurisdiction that the Court would otherwise lack.

15. Plaintiffs have repeatedly requested that the Company take action against Conserv, which requests have been refused and ignored.

16. In particular, on December 28, 2022, Plaintiffs sent a "Notice of Meeting to the Members of Berkeley Shredding, LLC to be held on January 12, 2023 at 10:00 AM" (the "Notice"). The Notice was for a special meeting and specified that the purpose was to call a vote in order for the company to take action against Conserv, including filing a lawsuit if necessary. The Notice was sent and served on the members of Berkeley Shredding in compliance with the relevant provisions of the Operating Agreement of Berkeley Shredding, LLC (the "Original Operating Agreement") and the Subscription Agreement and First Amendment to the Operating Agreement of Berkeley Shredding, LLC (the "First Amendment") (collectively, the "Operating Agreement").

17. Certain members objected to the Notice and refused or failed to attend the special meeting.

18. The special meeting was held on January 12, 2023. Only the Plaintiffs attended.

19. On January 18, 2023, the Plaintiffs sent a letter to the members of Berkeley Shredding, demanding again that the members and the company take action against Conserv. The letter set forth, in detail, the facts underlying this action and provided copies of all relevant documents. The letter concluded with a request that the members agree to take action against

Conserv without a meeting. The other members never acknowledged the letter or agreed to take action.

20. It is not surprising that the other members have refused to take action. For the reasons set forth herein and upon information and belief, the other members were involved in the various improper transactions with Conserv.

21. For the reasons contained in this Certification, Plaintiffs represent that the members or managers having authority to take action against Conserv have refused to commence the action. Furthermore, given the involvement of the other members in the transactions with Conserv, any further effort to cause those members or managers to commence the action is not likely to succeed

22. Plaintiffs hereby bring this action against Defendants on behalf of Plaintiff Berkeley Shredding.

**FACTUAL BACKGROUND**

23. Berkeley Shredding is a company that operates a Newell shredding machine (the "Shredding Machine") which breaks down and separates parts of used automobiles to be recycled and sold for scrap metal.

24. On June 21, 2011, Berkeley Shredding filed its Articles of Organization, electing to be a *manager-managed LLC* (the "Articles"). Thereafter, on July 14, 2015, the Amended Articles of Organization were filed to change the address of the initial designated office (the "Amended Articles".

25. Berkeley Shredding has never voted to appoint a Manager. This fact is affirmed in the First Amendment, which states, "the powers of the Company are exercised by and the business of the Company are managed under the direction of the Members until selection of a Manager."

26. Dusty Garus ('Garus") is the president of Paragon Investment Group, LLC ("PIG"), which is a member of Berkeley Shredding. PIG is not and has never been appointed as the Manager (or an officer) of Berkeley Shredding.

27. On March 8, 2019, Garus signed loan documents and obtained a loan from Conserv Lending, LLC, as President of and in the name of his company "Paragon Investment Group, LLC *dba Berkeley Shredding, LLC*" ("Loan #1"). See Exhibit A (emphasis added). However, PIG does not and has not ever conducted business as Berkeley Shredding, LLC, which is a separate, active corporate entity shown in good standing with the South Carolina Secretary of State.

28. The interest rate was fifteen and four tenths percent (15.4%), and the Shredding Machine owned by Berkeley Shredding was pledged as collateral.

29. Garus did not have the authority to borrow money on behalf of Berkeley Shredding or pledge collateral owned by Berkeley Shredding. Upon information and belief, Conserv did not have any proof of Garus' authority to act on behalf of Berkeley Shredding.

30. The loan principal, in the amount of one hundred and fifty thousand dollars ($150,000.00), was not deposited into a Berkeley Shredding account.

31. Upon information and belief, the principal was deposited into an account controlled by PIG.

32. Thereafter, Conserv Lending, LLC, filed a UCC-1 Financing Statement listing only PIG as the debtor, but reporting a security interest in all assets of PIG and Berkeley Shredding, and specifically listed the Shredding Machine owned by Berkeley Shredding. See Exhibit B.

33. On March 29, 2019, Garus signed loan documents and obtained a second loan from Conserv Lending, LLC, as President of and in the name of his company "Paragon Investment Group, LLC *dba Berkeley Shredding, LLC*" ("Loan #2"). See Exhibit C (emphasis added).

34. The interest rate was 15%, and the Shredding Machine owned by Berkeley Shredding was pledged as collateral.

35. Garus did not have the authority to borrow money on behalf of Berkeley Shredding or pledge collateral owned by Berkeley Shredding. Upon information and belief, Conserv did not have any proof of Garus' authority to act on behalf of Berkeley Shredding.

36. The loan principal, in the amount of $550,000.00, was not deposited into a Berkeley Shredding account.

37. Upon information and belief, the principal was deposited into an account controlled by PIG.

38. On November 13, 2019, Garus, listing himself as President of and in the name of Berkeley Shredding, entered into a Warrant to Purchase Units (the "Warrant") with Conserv Equipment Leasing, LLC. *See* Exhibit D. Again, Garus is not and has never been appointed President of Berkeley Shredding.

39. Under the Warrant, Conserv Equipment Leasing, LLC, was empowered to purchase one percent (1%) of the then issued outstanding membership interest in Berkeley Shredding for the price of one penny ($0.01) per unit. The term of the Warrant was five (5) years, and it could be transferred or assigned without restriction.

40. This Warrant and the effect of offering to sell membership interests in contradiction to the terms of the Operating Agreement was never discussed with the members of Berkeley Shredding. There was no vote, and Garus did not have the authority to execute the Warrant. Upon information and belief, Conserv did not have any proof of Garus' authority to execute the Warrant.

41. On November 15, 2019, Garus signed loan documents and obtained a third loan from Conserv Lending, LLC, as President of and in the name of his company "Paragon Investment Group, LLC *dba Berkeley Shredding, LLC*" ("Loan #3"). *See* Exhibit E (emphasis added).

42. The interest rate was twenty-four percent (24%), and the Shredding Machine owned by Berkeley Shredding was pledged as collateral.

43. Garus did not have the authority to borrow money on behalf of Berkeley Shredding or pledge collateral owned by Berkeley Shredding. Upon information and belief, Conserv did not have any proof of Garus' authority to act on behalf of Berkeley Shredding.

44. The loan principal, in the amount of two hundred ten thousand dollars ($210,000.00), was not deposited into a Berkeley Shredding account.

45. Upon information and belief, the principal was deposited into an account controlled by PIG.

46. On November 18, 2019, Garus signed loan documents and obtained a fourth loan from Conserv Lending, LLC, as President of and in the name of his company "Paragon Investment Group, LLC *dba Berkeley Shredding, LLC*" ("Loan #4"). *See* Exhibit F (emphasis added).

47. The interest rate was twenty-four percent (24%), and the Shredding Machine owned by Berkeley Shredding was pledged as collateral.

48. Garus did not have the authority to borrow money on behalf of Berkeley Shredding or pledge collateral owned by Berkeley Shredding. Upon information and belief, Conserv did not have any proof of Garus' authority to act on behalf of Berkeley Shredding.

49. The loan principal, in the amount of two hundred ten thousand dollars ($210,000.00), was not deposited into a Berkeley Shredding account.

50. Upon information and belief, the principal was deposited into an account controlled by PIG.

51. On March 10, 2020, Garus signed loan documents and obtained a fifth loan from Conserv Lending, LLC, as President of and in the name of his company "Paragon Investment Group, LLC *dba Berkeley Shredding, LLC*" ("Loan #5"). See <u>Exhibit G</u> (emphasis added).

52. The interest rate was twenty-four percent (24%), and the Shredding Machine owned by Berkeley Shredding was pledged as collateral.

53. Garus did not have the authority to borrow money on behalf of Berkeley Shredding or pledge collateral owned by Berkeley Shredding. Upon information and belief, Conserv did not have any proof of Garus' authority to act on behalf of Berkeley Shredding.

54. The loan principal, in the amount of two hundred ten thousand dollars ($210,000.00), was not deposited into a Berkeley account.

55. Upon information and belief, the principal was deposited into an account controlled by PIG.

56. Notably, on March 19, 2020, just 9 days after entering into Loan #5, Conserv Equipment Leasing, LLC, filed a UCC-1 financing statement listing PIG as the debtor and reporting a security interest in a "2019 IEC Thermo 3000S HEMP Dryer S/N: SC-1-02122019." See <u>Exhibit H</u>. This is the same kind of hemp dryer owned by Southern Harvest Services, LLC, a company owned and operated by Garus and Mike Baston ("Baston").[1]

57. On May 3, 2022, upon information and belief, Garus and Dan Shapiro ("Shapiro") signed and submitted a credit application to "re-finance" the five above-referenced loans.[2]

---

[1] Baston is the owner of Auto Salvage Company, LLC, which is a member of Berkeley Shredding.
[2] Shapiro is the owner of DJS Enterprises, LLC, which is a member of Berkeley Shredding.

58. Upon information and belief, Garus and Shapiro first reached out to Conserv about re-financing the loans within days of a Berkeley Shredding special meeting that occurred on April 28, 2022. A re-finance was never agreed to or even discussed at that meeting.

59. Thereafter, on June 3, 2022, Garus signed documents and entered into an "Equipment Lease Contract (1$ PO) Lease No. 4698-001" (the "Re-Fi Lease #1") on behalf of Berkeley Shredding. *See* Exhibit I. Notably, PIG is not referenced in any of the Re-Fi Lease #1 documentation.

60. Upon information and belief, Conserv did not have any proof of Garus' authority to act on behalf of Berkeley Shredding.

61. According to Conserv and despite having no documentation of ownership, Conserv claims it was deeded ownership of the Shredding Machine, which is the sole valuable asset of Berkeley Shredding. Under the terms of the Re-Fi Lease #1, which was signed by Garus, Conserv leased the Shredding Machine back to Berkeley Shredding.

62. The Equipment Cost under the Re-Fi Lease #1 is listed as nine hundred forty-five thousand six hundred fifty-two dollars and sixty-five cents ($945,652.65), and monthly payments in the amount of twenty-three thousand three hundred and fifty dollars ($23,350.00) were due from June 1, 2022, through the end of the sixty (60) month term.

63. Upon information and belief, the effective interest rate of the Re-Fi Lease #1 is sixteen and nine hundred sixty-five thousandths percent (16.965%). According to the Lease, if all rent payments are made, Berkeley Shredding has the option to purchase back its Shredding Machine for one dollar ($1.00).

64. The Re-Fi Lease #1 was never discussed with the Members of Berkeley Shredding. There was no vote, and Garus did not have the authority to enter into the Re-Fi Lease #1 on behalf of Berkeley Shredding.

65. Also on June 3, 2022, Garus signed documents and entered into an "Equipment Lease Contract (1$ PO) Lease No. 4698-002" (the "Re-Fi Lease #2"). *See* Exhibit J. PIG is not referenced in any of the Re-Fi Lease #2 documentation.

66. Upon information and belief, Conserv did not have any proof of Garus' authority to act on behalf of Berkeley Shredding.

67. The Equipment Cost under the Re-Fi Lease #2 is listed as three hundred and thirty-four thousand two hundred and sixty-four dollars and seventeen cents ($334,264.17), and monthly payments in the amount of eight thousand two hundred and fifty dollars ($8,250.00) were due from June 1, 2022, through the end of the sixty (60) month term.

68. Upon information and belief, the effective interest rate is sixteen and nine hundred sixty-five thousandths percent (16.965%). If all rent payments are made, Berkeley has the option to purchase back the Shredding Machine for one dollar ($1.00).

69. The Re-Fi Lease #2 was never discussed with the members. There was no vote, and Garus did not have the authority to enter into the Re-Fi Lease #2 on behalf of Berkeley Shredding.

70. On or around September 6, 2022, Conserv BECM, LLC, filed a new UCC-1 listing Berkley Shredding as a debtor and reporting a security interest in the Shredding Machine. *See* Exhibit K. Notably, Garus was also listed as a debtor on the UCC-1.

71. There was no vote, and Garus did not have the authority to pledge as collateral any assets owned by Berkeley Shredding.

72. In October 2022, after receiving default notices from Conserv, Plaintiffs McRoy and MPR requested copies of the original loans and re-finance documents from Conserv.

73. Conserv produced some limited documents, but admitted it had no documentation of Garus' authority to act on behalf of Berkeley Shredding.

74. On January 10, 2023, counsel for Conserv issued a Notice of Default under the Re-Fi Leases #1 and #2. The letter demanded accelerated payments from Berkeley Shredding and informed the Company of its intentions to repossess the Shredding Machine, which is the sole valuable asset owned by Berkeley Shredding.

**FOR A FIRST CAUSE OF ACTION**
(Declaratory Judgment pursuant to 28 U.S.C. §§ 2201, et al.)

75. Plaintiffs repeat and reallege each and every allegation as fully as if stated verbatim herein.

76. Plaintiffs have a substantial, legal interest in the subject maters in dispute of such immediacy and exigency to warrant a declaratory judgment.

77. For the reasons stated herein, there is an actual case and controversy between the Parties pursuant to Article III of the U.S. Constitution.

78. The case and controversy is ripe for adjudication.

79. Plaintiffs respectfully move this Court to declare the rights, status, and legal relations of the Parties by way of an Order declaring:

    a. Loans #1-#5 to be null and of no binding effect as to Berkeley Shredding because Garus had no authority to enter into those contracts on behalf of Berkeley Shredding or pledge the Shredding Machine as collateral and because the loan principals were never deposited into accounts owned by Berkeley Shredding. As such, Garus and

   PIG are the sole borrowers for Loans #1-#5 and are exclusively responsible for all contractual obligations owed to Conserv therein;

 b. The Warrant to Purchase Units dated November 13, 2019, entered into between Garus and Conserv to be null and void because Garus had no authority to enter into the Warrant or bind the Company to a sale of its outstanding membership interests;

 c. The UCC-1 filed on May 8, 2019, to be null and ineffective as to the pledge of Berkeley Shredding's assets, including the Shredding Machine, as collateral because Garus had no authority to bind Berkeley Shredding and its assets. As such, PIG is the sole Debtor under the UCC-1 and is exclusively responsible for satisfying all contractual obligations owed to Conserv;

 d. The UCC-1 filed on September 6, 2022, to be null and ineffective as to the listing of Berkeley Shredding as a debtor and its assets, including the Shredding Machine, as collateral because Garus had no authority to bind Berkeley Shredding and its assets. As such, PIG is the sole Debtor under the UCC-1 and is exclusively responsible for satisfying all contractual obligations owed to Conserv.

 e. Re-Fi Leases #1 and #2 to be null and void because Garus had no authority to enter into those contracts on behalf of Berkeley Shredding or to bind its assets. Furthermore, any deed executed by Garus transferring an ownership interest in the Shredding Machine to Conserv is void; and

 f. Such further relief this Court deems appropriate.

80. As a result of this action, Plaintiffs are also entitled to an award of all costs this Court deems equitable and just pursuant to 28 U.S.C. §§ 2201, et al.

## **FOR A SECOND CAUSE OF ACTION**
(Negligence/Gross Negligence)

81. Plaintiff repeats and realleges each and every allegation as fully as if stated verbatim herein.

82. Defendants are sophisticated commercial entities that owed Berkeley Shredding a duty to act in a reasonable and diligent manner when negotiating and entering the loans and leases and in participating in the commercial lending practices described herein.

83. Defendants breached these duties to Berkeley Shredding and were grossly negligent by issuing Garus multiple loans and filing improper UCC-1 Financing Statements, which exposed Berkeley Shredding to liability without any evidence of and without undertaking the appropriate measures to determine Garus' authority to do so.

84. Defendants further exhibited a callous and gross disregard of their duties to Berkeley Shredding by allegedly facilitating the transfer of the ownership of the Shredding Machine, entering into the Re-Fi Leases #1 and #2, and filing yet another improper UCC-1 Financing Statement, without any evidence of and without undertaking the appropriate measures to determine Garus' authority to act on behalf of Berkeley Shredding.

85. As a result of Defendants' negligent and grossly negligent actions, Berkeley Shredding has suffered and will continue to suffer pecuniary losses.

86. Defendants' breaches were the direct and proximate cause of damages suffered by Berkeley Shredding.

87. As a result of Defendants' breach of their duties, Berkeley Shredding is entitled to actual, consequential, and punitive damages and such other relief the Court deems reasonable.

## **FOR A THIRD CAUSE OF ACTION**
(Conversion)

88. Plaintiffs repeat and reallege each and every allegation as fully as if stated verbatim herein.

89. Berkeley Shredding has an ownership interest in the Shredding Machine.

90. Through the improper acts of Defendants, Defendants claim they have assumed ownership, possession, or control of Berkeley Shredding's Shredding Machine.

91. Defendants have not paid any consideration for the purchase of the Shredding Machine.

92. Additionally, Defendants have not produced any proof of Defendants' ownership of the Shredding Machine.

93. Defendants' claimed ownership interest in the machine is improper and illusory because Garus had no authority to transfer any assets to Defendants on behalf of Berkeley Shredding.

94. Berkeley Shredding has not ever authorized the transfer of ownership interest in the Shredding Machine to anyone, much less to Defendants.

95. As a result of Defendants' unauthorized assumption and assertion of ownership rights over the Shredding Machine and its threats for plans to repossess the Shredding Machine, Berkeley Shredding has suffered and will continue to suffer pecuniary losses.

96. Defendants' acts were the direct and proximate cause of damages suffered by Berkeley Shredding.

97. As a result of Defendants' improper actions, Berkeley Shredding is entitled to actual, consequential, and punitive damages and such other relief the Court deems reasonable.

**FOR A FOURTH CAUSE OF ACTION**
(Violation of S.C. Code § 36-9-501)

98. Plaintiffs repeat and reallege each and every allegation as fully as if stated verbatim herein.

99. Defendants knowingly negotiated and contracted with Garus, on behalf of Berkeley Shredding, despite having no evidence of Garus' authority to bind Berkeley Shredding or pledge the Shredding Machine as collateral.

100. Defendants filed financing statements on May 8, 2019, and September 6, 2022, purportedly binding the Company to agreements executed by Garus without authority from Berkeley Shredding.

101. Because Defendants did not obtain, and Garus did not have, authority from Berkeley Shredding to bind the Company and its assets, the financing statements filed by Conserv are void pursuant to S.C. Code § 36-9-501, *et seq*.

102. Because of Defendants' improper filings, Berkeley Shredding is wrongfully held out to the public as a debtor to Defendants and its assets, including the Shredding Machine, are encumbered by the financing statements.

103. Defendants' improperly filed financing statements have adversely effected Berkeley Shredding's credit, reputation, and standing in the business community.

104. As a direct and proximate cause of the improper UCC-1s, Berkeley Shredding has suffered actual, expectation, consequential, and other damages which will be demonstrated at trial.

WHEREFORE, Plaintiffs pray for a trial by jury and for the following:

    a. Judgment against Defendants under the causes of action stated herein;

    b. An award of actual, consequential, special, and punitive damages in an amount to be determined at trial;

c. Rescission of Loans #1-#5, the Warrant, and Re-Fi Leases #1 and #2;

d. Judgment against Defendants for equitable relief or damages including, but not limited to, an order declaring the UCC-1 financing statements referenced herein ineffective, and an order directing the Secretary of State to terminate or purge the financing statements as instructed under S.C. Code § 36-9-501, *et seq*.

e. An award of all costs incurred in this action;

f. An award of reasonable attorneys' fees;

g. An award of pre-judgment interest; and

h. Such other and further relief as this Court deems appropriate.

January 31, 2023
Charleston, SC

Respectfully submitted,

s/ Robert E. Sumner, IV
Robert E. Sumner, IV (S.C. Bar # 71728)
Joel A. Berly, IV (S.C. Bar # 103517)
BUTLER SNOW, LLP
25 Calhoun St., Ste. 250
Charleston, SC  29401
Telephone:  843/277-3700
Facsimile:  843/277-3701
E-Mail:  robert.sumner@butlersnow.com
E-Mail:  jay.berly@butlersnow.com

*Attorneys for Plaintiffs Berkeley Shredding, LLC; McRoy Equipment, LLC, MPR Holdings, LLC*

s/ John C. Johnston
John C. Johnston
JOHNSTON LAW, LLC
361 N. Shelmore Blvd.
Mt. Pleasant, SC  29464
Telephone:  843/ 535-9560
Facsimile:  843/ 535-9561
E-Mail:  john@johnstonlawsc.com

*Attorney for BBDS Used Auto Sale, Inc. d/b/a B&D Auto Parts*

# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Berkeley Shredding, LLC; McRoy Equipment, LLC; MPR Holdings, LLC; and BBDS Used Auto Sale, Inc. d/b/a B&D Auto Parts, individually and derivatively on behalf of Plaintiff Berkeley Shredding, LLC<br><br>Plaintiffs,<br><br>v.<br><br>Conserv Capital, LLC; Conserv Equipment Leasing, LLC; Conserv Lending, LLC; and Conserve BECM, LLC<br><br>Defendants. | Case No.: 2:23-cv-00436-DCN<br><br>**VERIFICATION OF COMPLAINT** |

PERSONALLY appeared before me the undersigned affiant, who, being duly sworn, deposes and says that he is a member/manager of MCROY EQUIPMENT, LLC named herein, and that he is familiar with the transactions and facts stated in the above pleadings; that he has read the said pleadings; that the facts therein as stated are true, except those matters stated on information and belief, and as to those, he believes them to be true; and, it is necessary for deponent to make this verification on behalf of MCROY EQUIPMENT, LLC.

EXECUTED, this the 27 day of January, 2023.

_____
Patrick McRoy

SWORN TO and subscribed before me
This 27 day of January, 2023.
_____
Notary Public, State of South Carolina
My commission expires: March 25, 2025



IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Berkeley Shredding, LLC; McRoy Equipment, LLC; MPR Holdings, LLC; and BBDS Used Auto Sale, Inc. d/b/a B&D Auto Parts, individually and derivatively on behalf of Plaintiff Berkeley Shredding, LLC<br><br>Plaintiffs,<br><br>v.<br><br>Conserv Capital, LLC; Conserv Equipment Leasing, LLC; Conserv Lending, LLC; and Conserve BECM, LLC<br><br>Defendants. | Case No.:<br><br>**VERIFICATION OF COMPLAINT** |

PERSONALLY appeared before me the undersigned affiant, who, being duly sworn, deposes and says that he is a member/manager of MPR Holdings, LLC named herein, and that he is familiar with the transactions and facts stated in the above pleadings; that he has read the said pleadings; that the facts therein as stated are true, except those matters stated on information and belief, and as to those, he believes them to be true; and, it is necessary for deponent to make this verification on behalf of MPR Holdings, LLC.

EXECUTED, this the 27th day of January, 2023

_____
Nankumar Ramdial

SWORN TO and subscribed before me
This 27th day of __January__, 2023
_____
Notary Public, State of South Carolina
My commission expires: __04-26-2032__



IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Berkeley Shredding, LLC; McRoy Equipment, LLC; MPR Holdings, LLC; and BBDS Used Auto Sale, Inc. d/b/a B&D Auto Parts, individually and derivatively on behalf of Plaintiff Berkeley Shredding, LLC<br><br>Plaintiffs,<br><br>v.<br><br>Conserv Capital, LLC; Conserv Equipment Leasing, LLC; Conserv Lending, LLC; and Conserve BECM, LLC<br><br>Defendants. | Case No.:<br><br>**VERIFICATION OF COMPLAINT** |

PERSONALLY appeared before me the undersigned affiant, who, being duly sworn, deposes and says that he is a shareholder/manager of BBDS Used Auto Sale, Inc. d/b/a B&D Auto Parts named herein, and that he is familiar with the transactions and facts stated in the above pleadings; that he has read the said pleadings; that the facts therein as stated are true, except those matters stated on information and belief, and as to those, he believes them to be true; and, it is necessary for deponent to make this verification on behalf of BBDS Used Auto Sale, Inc. d/b/a B&D Auto Parts.

EXECUTED, this the ___ day of January, 2023.

_____
Shaun Stroble

SWORN TO and subscribed before me
This 27 day of January, 2023.
_____
Notary Public, State of South Carolina
My commission expires: ~~1/27/2023~~ 01/03/2030